IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WAYNE MILLER, *on behalf of himself and all others similarly situated*, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:18-CV-538-RP |
| MV TRANSPORTATION, INC., | § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Plaintiff Wayne Miller's ("Miller") Motion for Conditional Certification. (Dkt. 16). Having considered the parties' arguments, the record, and the relevant law, the Court finds that the motion should be granted in part.

## I. BACKGROUND

This is a Fair Labor Standards Act ("FLSA") action concerning overtime compensation for employees of Defendant MV Transportation, Inc. ("MVTI"), a services contractor for Austin's Capital Metro. (Am. Compl., Dkt. 27, at 1). Plaintiff Wayne Miller ("Miller") alleges that he and similarly situated employees were denied overtime because MVTI shaved their time and deducted time for meal breaks that were actually spent working. (*Id.* at 4–5). Miller seeks to certify this action as a collective action under the FLSA. (Mot. Certify, Dkt. 16, a 4 (citing 29 U.S.C. § 216(b))). To that end, he asks the Court to certify the following class and send order that notice be sent to potential class members:

> All current and former maintenance employees who were treated by Defendant as FLSA non-exempt and who worked for Defendant in Austin, Texas[,] within the past three years.

1

(*Id.* at 3). In subsequent briefing, Miller agrees to limit the class to "only those employees who worked at the facility where [Miller] worked: the UT Shuttle Division." (Reply Mot. Certify, Dkt. 33, at 2 n.1). MVTI opposes class certification on several grounds. (*See* Resp. Mot. Certify, Dkt. 29).

## II. LEGAL STANDARD

The FLSA permits one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under this provision, other similarly situated employees "do not become plaintiffs in the action unless and until they consent in writing." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008). "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'" *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). The Fifth Circuit has approved of two different methods for certifying an FLSA collective action, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and this Court uses the "two-step conditional certification process known as the *Lusardi* approach." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 513 (W.D. Tex. 2015).

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." *Mooney*, 54 F.3d at 1216. At the notice stage, the district court determines whether "the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). Because the Court has "minimal evidence" at this stage, the determination is made "using a fairly lenient standard," resulting in only the "conditional certification" of a representative class. *Dyson*, 308 F.R.D. at 513 (quoting *Mooney*, 54 F.3d at 1214). "After the class members have opted in and discovery is complete, the defendant may then file a decertification motion—the second stage of the

*Lusardi* approach—asking the court to reassess whether the class members are similarly situated." *Id.* at 512–13 (citing *Mooney*, 54 F.3d at 1214).

Miller's motion brings this action to the notice stage. At this stage, several considerations apply. First, Miller bears the burden of making the preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011). But that burden is a lenient one:[1] Miller must establish nothing more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney*, 54 F.3d at 1214 n.8. To determine whether an FLSA plaintiff has met his or her burden, courts often look at "whether potential plaintiffs were identified, . . . whether affidavits of potential plaintiffs were submitted, . . . and whether evidence of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (citations omitted).

Second, in evaluating Miller's motion, the Court's determination at this stage is "based on the pleadings and affidavits of the parties." *In re JPMorgan Chase & Co.*, 916 F.3d at 500. The Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lay v. Gold's Gym Int'l, Inc.*, SA-12-CV-754-DAE, 2013 WL 5595956, at *5 (W.D. Tex. Oct. 4, 2013) (quoting *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). Indeed, at this stage, "courts must be scrupulous to respect judicial neutrality," and must therefore "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174.

---

[1] While the notice stage "typically results in conditional certification," *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012), it is by "no means mandatory." *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 759 (N.D. Tex. 2013); *see also Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706 (N.D. Tex. 2008) ("While the plaintiffs' burden at th[e notice] stage is not onerous, neither is it invisible."). Nonetheless, "the remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively." *Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (cleaned up).

That said, where—as here—an arbitration agreement may prevent potential plaintiffs from participating in the collective action, a district court must ensure at *Lusardi* step one that notice is not sent to them. *In re JPMorgan Chase & Co.*, 916 F.3d at 501. If there is a genuine dispute as to the existence or validity of an arbitration agreement, the employer has the burden to prove the agreement's existence and validity by a preponderance of the evidence. *Id.* at 502–03. A court may consider additional evidence at *Lusardi* step one to resolve such disputes. *Id.* at 503.

Finally, a district court may modify the proposed class definition if it is overly broad. *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005) (recognizing a court's power to "limit the scope" of a proposed FLSA action).

### III. DISCUSSION

Miller was a parts manager for MVTI's maintenance division from October 2015 until March 2018. (Miller Decl., Dkt. 16-1, ¶ 1). He says that he was an hourly employee who often worked more than 40 hours per week, but that MVTI would "shave" his hours—reduce the hours reported on his time cards—to deny him overtime compensation. (*Id.* ¶¶ 3–4; Am. Compl., Dkt. 27, at 4). He also says that MVTI would automatically reduce his time worked by 30 minutes for lunch, even on days when he worked through some or all of his lunch break. (Miller Decl., Dkt. 16-1, ¶¶ 3–4). According to Miller, other maintenance department employees told him that they had experienced the same problems. (*Id.*). One of those other employees, James Ortego, filed a declaration lodging essentially the same allegations. (Ortego Decl., Dkt. 16-2). Miller believes that the time-shaving and lunch-docking constituted a *de facto* company policy because the practice was commonly practiced and widely known, but never remedied. (Miller Decl., Dkt. 33-1, ¶ 10). In sum, Miller and Ortego allege that they and other MVTI maintenance employees were (1) paid on an hourly basis, (2) non-exempt and overtime eligible, and (3) subject to hours-reductions policies

designed to reduce their overtime compensation. (Miller Decls., Dkts. 16-1 & 33-1; Ortego Decl., Dkt. 16-2).

At the outset, MVTI points out that Miller and Ortego's allegations pertain only to their experience working in one of MVTI's two facilities: its UT Shuttle Division. (Resp. Mot. Certify, Dkt. 29, at 10). Miller agrees that, at the very least, the class should be limited to employees who worked in the UT Shuttle Division. (Reply Mot. Certify, Dkt. 33, at 2 n.1).

Beyond that point, however, lies a series of disputes. First, MVTI argues that conditional certification is inappropriate both because the potential plaintiffs' claims are too individualized and because the only common policy is a lawful one. (Resp. Mot. Certify, Dkt. 29, at 9–16). Second, it also argues that conditional certification is inappropriate because there is no evidence of other interested potential plaintiffs. (*Id.* at 16–17). Third, it argues that the scope of the class is overbroad because many members belong to a union whose collective bargaining agreement precludes them from joining this action. (*Id.* at 17–21). Separate from its arguments against conditional certification, MVTI also objects to the content and method of Miller's proposed class notice, (*id.* at 23–24), and to tolling the statute of limitations for potential class members, (*id.* at 24–25). The Court will address each issue in turn.

### 1. Are the Potential Plaintiffs' Claims Too Individualized?

MVTI points out that evaluating each maintenance employee's claim will require determination of whether the employee worked the hours they claim, whether they reported those hours and to whom, whether their meal break was in fact interrupted, and whether they were in fact compensated for the hours claimed. (Resp. Mot. Certify, Dkt. 29, at 15). These are all individualized inquiries, so much so—according to MVTI—that collective action would be inappropriate. (*Id.* at 16 (citing *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *10

(W.D.N.C. Sept. 16, 2011) ("Where the record before the court demonstrates that there is no common policy or scheme and instead individualized questions of fact predominate, the action is not an appropriate one for certification.")).

It is true that proof of these allegations will require, to a certain degree, an individualized analysis of each employee's time records and the reasons for reducing the employee's time or refusing to increase it. (Resp. Mot. Certify, Dkt. 29, at 15). But these allegations describe two policies common to the class, provable by evidence common to the class, which creates a "factual nexus" between the plaintiffs' claims. *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014). These allegations are enough to find Miller's potential plaintiffs—at least, the subset of them who worked at the UT Shuttle Division—similarly situated under Section 216(b) at this stage, notwithstanding the fact that proof of each plaintiff's damages will be individualized. *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) (finding the class members to be similarly situated "because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct"). As Miller points out, "the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated." *Maynor v. Dow Chem. Co.*, CIV. A. G-07-0504, 2008 WL 2220394, at *9 (S.D. Tex. May 28, 2008) (citing *U.S. Dep't of Labor v. Cole Enters.*, 62 F.3d 775, 781 (6th Cir. 1995)).

**B. Does Miller Allege a Company Policy or Just Isolated Supervisor Conduct?**

According to MVTI, it "has a clear system in place" to make sure that its employees are paid properly. (Resp. Mot. Certify, Dkt. 29, at 12). According to its official policy, MVTI's UT Shuttle Division provides employees with a "payroll recap" that breaks down the days and hours worked in

6

each pay period, and employees can notify MVTI of any errors in their pay or hours. (Harper Decl., Dkt. 29-1, at 8).[2] Indeed, MVTI identifies instances in which Miller worked through lunch and was paid for that time. (*Id.* at 9–10). In MVTI's view, its official policy is to comply with the FLSA, and none of Miller's allegations describe a corporate decision to ignore its official policy. (Resp. Mot. Certify, Dkt. 29, at 12).

MVTI points out, correctly, that it is not necessarily unlawful under the FLSA to automatically deduct time for meal breaks. (Resp. Mot. Certify, Dkt. 29, at 10–11); *see White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012); ("An automatic meal deduction system is lawful under the FLSA."); *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 55 (D.D.C. 2012) (finding that "the bare existence of an auto-deduct policy . . . is not by itself the least bit unlawful"); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 206 (N.D.N.Y. 2009) ("[T]he mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA."). The Court agrees with MVTI that an automatic-meal-deduction-policy is lawful so long as the employer has a policy to pay its employees for all compensable time worked. (Resp. Mot. Certify, Dkt. 29, at 11). On its face, MVTI's formal policy appears to be such a policy.

But an employer's formal policy may differ from its *de facto* policy, and Miller and Ortego allege that in practice, MVTI's policy is to ignore employees' requests to be compensated for meal breaks during which they worked. (Miller Decl., Dkt. 33-1, ¶¶ 3–4, 10; Ortego Decl., Dkt. 16-2, ¶ 4). According to Miller, he and others "regularly worked through lunch," which was "constantly interrupted." (Miller Decl., Dkt. 33-1, ¶ 4). When he complained to management that he was not

---

[2] Donna Harper's declaration appears in a single PDF along with its supporting exhibits. (Dkt. 29-1). Citations to her declaration or the supporting exhibits are to the PDF page, not the page number for the discrete document within the PDF.

being paid for these interrupted breaks, "nothing changed." (*Id.*). He says it was "common knowledge" that MVTI would refuse to compensate employees for interrupted meal breaks, and that "nothing was ever done" to remedy the employees' complaints about this practice. (*Id.* ¶ 10).

These allegations are substantial enough to warrant conditional certification. The FLSA requires "an employer to compensate employees who work through . . . unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated." *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 760 (W.D. Tenn. 2011) (quoting *Colozzi*, 595 F. Supp. 2d at 206–07). District courts often conditionally certify FLSA classes when presented with allegations that supervisors are in practice discouraging employees from correcting their time records or wrongfully refusing to correct employees' time records. *See Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 877 (S.D. Ohio 2017) (conditionally certifying a class where the employer's "enforcement of its automatic meal deduction policy has violated the FLSA by causing Plaintiff and other potential class members to work hours for which they were not compensated"); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 895 (S.D. Ohio 2016) (conditionally certifying a class where plaintiffs alleged "that they and other workers were often unable to take meal breaks and were discouraged from canceling the automatic deduction when they could not take a break"); *Lindberg*, 761 F. Supp. 2d at 761 (conditionally certifying a class where plaintiffs alleged that management knew they were working through meal breaks but "routinely discouraged employees from utilizing the time adjustment forms").

Conditional certification is especially appropriate in light of additional allegations that MVTI has a *de facto* policy to shave maintenance employees' time to reduce their overtime hours. (Miller Decl., Dkt. 33-1, ¶¶ 5–10; Ortego Decl., Dkt. 16-2, ¶ 2–3). Indeed, Ortego says that one of his supervisors showed him "how management manually adjusted employee time," which happened "on

a regular basis." (Ortego Decl., Dkt. 16-2, ¶ 2). There is no question that the purposeful alteration of employee time records to reduce overtime compensation violates the FLSA. *See, e.g.*, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980 (2018) (affirming conditional certification based on evidence of defendant's time-shaving policy); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (denying decertification based on evidence that the class members had time shaved off their hours by supervisors). Miller and Ortego's allegations that the practice was routine, widely known because of frequent complaints, and unremedied are substantial enough to warrant conditional certification.

### 3. Is There Enough Evidence of Other Interested Plaintiffs?

Next, MVTI argues that conditional certification is inappropriate because Miller has not identified other interested plaintiffs. (Resp. Mot. Certify, Dkt. 29, at 16–17 (citing *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) ("[A] showing that others desire to opt-in must be made before notice is authorized."))). MVTI points out, correctly, that no other plaintiff has opted in—not even Ortego—and Miller identifies no other potential plaintiffs by name. (*Id.*). Rather, Miller's evidence of interest is limited to his and Ortego's general declarations that "there are many current and former employees who would join a collective action" if informed of their rights to do so. (Miller Decl., Dkt. 16-1, ¶ 5; Ortego Decl., Dkt. 16-2, ¶ 5).

While it is true that some courts require more concrete evidence of interested potential plaintiffs at the conditional-certification stage, this Court has previously held that such a requirement is not based on the FLSA and is indeed inconsistent with the FLSA. *See Townsend v. Cent. Pony Express, Inc.*, SA-17-CV-00552-OLG, 2018 WL 2432962, at *2 (W.D. Tex. Jan. 26, 2018) ("After reviewing the applicable law, the court finds that a plaintiff does not necessarily need to present evidence at this stage of specific individuals who actually wish to opt in to the lawsuit.");

*Contreras v. Land Restoration LLC*, 1:16-CV-883-RP, 2017 WL 663560, at *7 (W.D. Tex. Feb. 17, 2017) (quoting *Black v. SettlePou, P.C.*, 2011 WL 609884 at *3 (N.D. Tex. Feb. 14, 2011)) ("Requiring Plaintiffs to identify and obtain preliminary support from potential class members is 'putting the cart before the horse.'"); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 513 (W.D. Tex. 2015) (finding that plaintiffs satisfied their conditional-certification burden through declarations that other employees may be interested in joining the lawsuit). Miller and Ortego's declarations are enough evidence of other potential plaintiffs at this early stage in the litigation. For the reasons given above, the Court finds that Miller's proposed class, modified to apply only to the UT Shuttle Division, should be conditionally certified. What remains to be determined is the scope of the class, the content of the notice, and whether to equitably toll the statute of limitations for plaintiffs who opt in.

### 4. Does the Collective Bargaining Agreement Limit the Class's Scope?

Unlike most of the proposed class, Miller was a supervisor at the UT Shuttle Division. (Resp. Mot. Certify, Dkt. 29, at 17). The non-supervisory members of the proposed class are union members subject to their collective bargaining agreement ("CBA"). (*Id.*). That CBA contains a grievance procedure for misreported time:

> "If the Company alters or denies any time reported by an employee, affecting the employee's pay, the employee will be promptly notified. Any disagreement may be resolved through the grievance procedure."

(CBA, Dkt. 29-1, at 167). MVTI argues that no unionized maintenance employee should receive notice of this action because this arbitration agreement precludes their participation in this action. (Sur-Reply Mot. Certify, Dkt. 37, at 7 (citing *In re JPMorgan Chase & Co.*, 916 F.3d at 504)).

Miller responds that the grievance procedure is not preclusive because it is merely optional. (Reply Mot. Certify, Dkt. 33, at 11 (emphasizing that disagreements "may"—not "must"—be

resolved through the grievance procedure)). But employees "wishing to assert contract grievances" must first use the CBA's procedure before seeking relief in federal court unless the parties to the CBA "expressly agree[ ]" that arbitration is "not the exclusive remedy." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 657–58 (1965). Use of the word "may" does not "of itself reveal a clear understanding" between the CBA's parties that employees may "avoid the contract procedure . . . in favor of judicial suit." *Id.* at 658–59. So, too, here: the CBA's provision that disagreements about reported time and payment "may" be resolved according to the contract procedure is not an express agreement that the grievance procedure is not the exclusive remedy for such disputes, and "[a]ny doubts must be resolved against such an interpretation." *Id.* at 659.

But even mandatory grievance procedures do not apply to statutory claims unless the CBA so provides. Miller argues that the grievance procedure is not preclusive because it only applies to contract grievances and not to statutory causes of action. (Sur-Sur-Reply, Dkt. 40, at 4). According to Miller, the class's claims are not contract grievances because there are "not relying on the terms of the CBA to recover wrongfully denied overtime," but rather on the FLSA. (*Id.*). And, as Miller points out, the CBA's grievance provision does not refer to the FLSA. (CBA, Dkt. 29-1, at 167).

This last fact is critical. In the context of a CBA, an agreement to "arbitrate statutory . . . claims [must] be 'explicitly stated' in the collective bargaining agreement." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) (quoting *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998)). A CBA can meet that requirement by expressly identifying the statutory claims by name. *See id.* (finding that the CBA explicitly stated that the parties agreed to arbitrate Age Discrimination in Employment Act ("ADEA") claims when it named the ADEA in the arbitration provision). On the other hand, a CBA fails to meet that requirement when it fails to either "identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory

claims." *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 360 (5th Cir. 2012). *Ibarra* makes clear that

identification must be explicit; merely describing the *substance* of a statutory claim is not enough. *See*

*id.* (holding that the plaintiffs' CBA did not "clearly and unmistakably" waive their right to bring a

Title VII in federal court, even though the CBA's arbitration provision covered disputes arising

under its nondiscrimination provision, which barred discrimination based on a person's "race, color,

religion, sex, sexual orientation, national origin, physical disability, veteran status or age in violation

of any federal or state law") (cleaned up). Here, the CBA does not explicitly state that its arbitration

provision covers FLSA claims because it nowhere mentions, much less expressly incorporates, the

FLSA. (CBA, Dkt. 29-1, at 128–73). At most, its arbitration provision identifies conduct relevant to

an FLSA claim: denying payment for time reported by an employee. (*Id.* at 167). But identifying

conduct relevant to a statutory claim is not enough to "clearly and unmistakably" agree to arbitrate

that claim, particularly given *Ibarra*'s holding that describing the same conduct proscribed by a

federal statute does not clearly and unmistakably identify that statute. *Ibarra*, 695 F.3d at 360. The

CBA does not affect the scope of the class to be conditionally certified.

### 4. Content and Form of Notice

MVTI offers two objections to the content and form of Miller's proposed notice. First, it

argues that Miller should have to tell potential plaintiffs that they may be required to pay MVTI's

costs if it prevails on the merits. (Resp. Mot. Certify, Dkt. 29, at 22–23). This objection is overruled

because Plaintiff's counsel's representation agreement absolves plaintiffs from responsibility for

costs. (Reply Mot. Certify, Dkt. 33, at 13 n.20). Second, MVTI objects to sending reminder notice

because approving such notice might be seen as approval of the merits of the class's claims. (Resp.

Mot. Certify, Dkt. 29, at 24). The Court does not share MVTI's concerns and will approve reminder

notice in this case as it has in other FLSA collective actions. *See Ferguson v. Texas Farm Bureau Bus.*

*Corp.*, 6:17-CV-111-RP, 2018 WL 1392704, at *4 (W.D. Tex. Mar. 20, 2018); *Page v. Crescent Directional Drilling, L.P.*, 5:15-CV-193-RP, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015); *Dyson*, 308 F.R.D. at 516–17. As for MVTT's other objections, the parties shall confer about a joint notice form, and the Court will address any objections that remain after the parties' conference.

### 5. Equitable Tolling

In general, an FLSA cause of action must be brought within two years of accrual. 29 U.S.C. § 255(a). In an FLSA collective action, "the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date." *Sandoz*, 553 F.3d at 916–17. The FLSA's limitations period can be equitably tolled. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("This equitable doctrine is read into every federal statute of limitations."). But while the decision to allow equitable tolling rests in the discretion of the district court, *Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002), equitable tolling "is a narrow exception . . . that should be 'applied sparingly.'" *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) (quoting *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011)). For this narrow exception to apply, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (citation omitted). This standard requires "reasonable diligence," not "maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010). An extraordinary circumstance is one "that derives from some external obstacle to timely filing beyond the plaintiff's control, not from self-inflicted delay." *Sandoz*, 700 F. App'x at 320 (citing *Menominee Indian Tribe*, 136 S. Ct. at 755) (cleaned up). The party invoking equitable tolling bears the burden of proof. *Teemac*, 298 F.3d at 457.

Miller asks the Court to toll the limitations period for any opt-in class member from the date of his motion until the notice and opt-in period is over. (Mot. Certify, Dkt. 16, at 10–11). He argues that he acted diligently in seeking conditional certification by filing the instant motion within five months of filing his complaint and argues that the time that has passed since then has been out of his control. (*Id.*). Six weeks of that delay was due to a stay issued at the request of MVTI while the Court considered whether to permit Miller to amend his complaint. (*See* Dkts. 22, 26). As Miller points out, some courts have equitably tolled the FLSA's limitations period while a motion for conditional certification was pending. *See Hernandez v. Caviness Packing Co., Inc.*, 2:07-CV-142-J, 2008 WL 11183755, at *2 (N.D. Tex. June 2, 2008); *Davis v. Flare Ignitors & Rentals, Inc.*, SA-11-CA-00450-OLG, 2012 WL 12539328, at *2 (W.D. Tex. Mar. 19, 2012).

But Miller has provided no evidence that the potential opt-in plaintiffs have been unaware of their rights or prevented from joining this action. Indeed, tolling the limitations period as Miller requests would entail giving Mr. Ortego, who has been aware of his rights since at least the date of his declaration but has not sought to be joined as a named plaintiff, extraordinary relief without justification. Miller has not met his burden to establish that such relief is justified for Mr. Ortego or the rest of the proposed class. *See Mejia v. Brothers Petroleum, LLC*, No. 12-2842, 2014 WL 3853580, at *2 (E.D. La. Aug. 4, 2014) ("A delay of five months between the Class Action Motion and certification by the court is not an extraordinary circumstance.") (citing cases); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808–09 (S.D. Tex. 2010) (rejecting equitable tolling of FLSA claims when the motion for conditional certification was pending for six months).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Miller's Motion for Conditional Certification, (Dkt. 16), is **GRANTED IN PART**. The motion is granted insofar as the Court will grant Miller the following relief and no other:

(1)  The Court conditionally certifies the following class ("Class") for purposes of providing notice to potential class members and allowing potential class members to opt in:

> All current and former maintenance employees who were treated by Defendant as FLSA non-exempt and who worked for Defendant's UT Shuttle Division in Austin, Texas, within the three years preceding the date of Miller's motion for conditional certification.

(2)  The parties shall confer about the form and content of class notice, as well as a proposed schedule for issuing that notice, receiving responses, and briefing MVTT's motion for decertification. Given Miller's concerns about the limitations period, the parties shall submit a joint proposed class notice and schedule **on or before May 21, 2019**. If the parties cannot agree on the class notice or schedule, they shall submit a joint advisory **on or before May 21, 2019**, in which they describe the areas of their disagreement and request a telephone conference to resolve them.

**SIGNED** on May 14, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE